IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TISHOMINGO RAILROAD COMPANY, INC.,
and R. BRUCE CRAWFORD, Individually　　　PLAINTIFFS/COUNTER-DEFENDANTS

V.　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 1:06CV343-B-D

BELLSOUTH TELECOMMUNICATIONS, INC.　　DEFENDANT/COUNTER-CLAIMANT

**MEMORANDUM OPINION**

This cause comes before the court on the bench trial held August 2-5, 2010. After consideration of the testimony, evidence, and exhibits presented at trial and the post-trial briefs submitted by the parties, the court finds as follows.

Factual and Procedural Background

The issue in this case involves questions of real property law that date back to the 1970s. In 1978, the Tennessee Valley Authority ("TVA") began construction of a nuclear power plant on the Tennessee River in Tishomingo County, Mississippi, in an area of the river known as "Yellow Creek." To serve this nuclear facility, a railroad access line was built in 1980 from the Yellow Creek site connecting with the Norfolk and Southern Railway Line approximately ten miles from the Yellow Creek site. The decision by TVA that a nuclear power plant was needed in the area was short-lived. After the expenditure of several million dollars, TVA decided in 1984 that the nuclear generating plant would not be financially productive, and the plans were abandoned, leaving a partially completed facility vacant on Yellow Creek.

TVA later transferred its interests in the Yellow Creek site to the National Aeronautical and Space Administration ("NASA") which took over the defunct, partially completed nuclear facility with plans to use it for the building of a solid-fuel rocket manufacturing facility to be used in its space exploration program. This decision by NASA also was short-lived. In 1993, Congress pulled funding, and the plans for the solid-fuel rocket plant at Yellow Creek were cancelled. Before the death warrant for the rocket plant was signed, NASA had conveyed several public utility easements within and along the length of the railroad right-of-way at Yellow Creek, including a fiberoptic telecommunications easement to BellSouth, for the purpose of communication service to the rocket facility. At the time the rocket plant was abandoned, however, BellSouth had not yet begun installing the buried single-duct fiberoptic cable planned for the easement.

With the plans for the two federal facilities cancelled, in 1996 the United States conveyed the real property and the facilities thereon, including the buildings and railroad access line, by quitclaim deed to the State of Mississippi. This deed was recorded in the deed books of Tishomingo County, Mississippi, in which the property was situated. The quitclaim deed mentioned public utility easements, including the easement from NASA to BellSouth.

In an attempt to attract industry to the Yellow Creek site, the State of Mississippi gave the Mississippi Department of Economic and Community Development ("MDECD") (subsequently known as the Mississippi Development Authority) the responsibility to manage the Yellow Creek site as an industrial park to be called the Tri-State Commerce Park. In the spring of 1999, representatives of the plaintiff Tishomingo Railroad Company ("TRC") contacted MDECD about obtaining a lease of the railroad access line and equipment and the railroad right-of-way as

an entrepreneurial project to provide access to the park for industries which might locate in the park. TRC representatives sent a proposed lease to MDECD's office in Jackson, Mississippi, and discussions about this draft lease – from the State of Mississippi to the TRC entrepreneurs – took place between Robert Crawford, the father of plaintiff Bruce Crawford, and Bob Smira, a deputy director of MDECD. TRC and MDECD entered into an operating agreement, which the parties refer to as a "Letter of Understanding," on October 4, 1999. This document was signed by Bruce Crawford on behalf of TRC and Dr. Bob Robinson, MDECD's site manager at Yellow Creek. Upon obtaining the signed Letter of Understanding from MDECD, TRC filed a Notice of Exempt Transaction with the Surface Transportation Board ("STB"), and the STB issued a Class III Permit authorizing TRC to operate the railroad access line on the property. TRC later prepared another document, also signed by Crawford and Robinson, known as the "Amendment to Letter of Understanding." The agreement granting TRC the authority to operate the above-described railroad reflected by the two "Letters of Understanding" is still in effect. The parties, however, never entered into a formal lease agreement.

The plaintiffs herein filed this complaint in the Chancery Court of Tishomingo County, Mississippi, on November 15, 2006, seeking damages from BellSouth for trespassing on the TRC railroad right-of-way by placing fiberoptic cables along the right-of-way and for the continued use of the cables through the present time; however, TRC was sold to Mississippi Central Railroad ("MCRR") effective August 1, 2009. Prior to the sale to MCRR, TRC granted to plaintiff Bruce Crawford, individually, the right to retain for himself any licensing fees that may be owed to TRC at the time of the sale, thus the standing of Bruce Crawford as an individual plaintiff herein. MCRR was made a co-plaintiff in this case pursuant to Federal Rule of Civil

Procedure 19 and seeks damages from BellSouth from the date of its purchase from TRC until the present.

Findings of Fact and Conclusions of Law

The plaintiffs Tishomingo County Railroad and Mississippi Central Railroad argue that this court does not have jurisdiction to determine whether the Letters of Understanding were a lease, because, they argue, only the national Surface Transportation Board ("STB") can hear challenges to the authority of railroad companies operating on its tracks. The court rejects this argument as it is contrary to the Surface Transportation Board's own rulings. As the STB has explained, "it is well settled that the interpretation of deeds and the determination of who owns good title to property are issues of state law that are outside of the expertise of the [STB]." *Cent. Kansas Railway, LLC – Abandonment Exemption – In Marion and McPherson Counties, KS*, No. AB-406, 2001 WL 489991, at *2 & n.2 (STB May 3, 2001). *See also Hayfield N. R.R. v. Chicago & N.W. Transp.*, 467 U.S. 622, 634 (1984); *Presault v. Interstate Commerce Commission*, 494 U.S. 1, 8 (1990) (state law governs disposition of reversionary interests subject to the STB's jurisdiction to regulate abandonments); *Kansas City Public Service Freight Operation – Abandonment Exemption – In Jackson County, MO*, No. AB-321-X, 1990 WL 300646, at *7 (STB Dec. 20, 1990) (issues of real property rights are within exclusive jurisdiction of the State). The STB has explicitly recognized that "its involvement . . . was not needed" in determining real property rights because the issue of "what property rights the landowner had was the type of issue the courts are well suited to address." En Banc Brief of Amicus Curiae Surface Transportation Board, *Franks Investment Co. v. Union Pacific R.R. Co.*, 593 F.3d 404 (5th Cir. 2010) (No. 08-30236), 2009 WL 6297302, at *17. The STB further

acknowledged that if it were required to resolve such disputes, "the crush of cases would significantly overburden the STB's resources ... not only because of the sheer number of cases that could be brought ... but also because the Board has no particular expertise or familiarity with the property laws of each state." *Id.* at *17-18. The *Franks* court ultimately determined that a state landowner's suit to prevent the defendant railroad from closing four private right-of-way crossings was not preempted by federal laws managing and governing rail transportation. *Franks*, 593 F.3d at 415. In accordance with the STB's rulings as well as the Fifth Circuit and U.S. Supreme Court cases cited, this court finds that it has proper jurisdiction over the present action.

Several discussions took place between TRC representatives and MDECD about the proposed lease, but no formal lease was ever signed and executed by the required officials of MDECD.[1] The two parties did, however, enter into a written operating agreement, reflected in the Letter of Understanding referenced hereinabove, in October of 1999. That agreement is still in effect, and no further documents have been signed or created between TRC (or its successor, MCRC) and the State of Mississippi. TRC filed a notice of exemption under 49 C.F.R. 1150.31 with the STB, and the STB's exemption decree was published to become effective on October 28, 1999. In December 1999, the agreement between TRC and the State of Mississippi was amended to give TRC the use of the railroad right-of-way and to allow it to keep the proceeds from the licensing of easements along the right-of-way without having to share any of those

---

[1] Jimmy Heidel, Executive Director of MDECD when the Letters of Understanding were signed, testified that he was the only person in his agency at that time with the statutory authority to sign a lease of real property on behalf of the State of Mississippi and that he never signed a lease from the State of Mississippi to TRC, and he never assigned that authority to anyone in MDECD while he served as its executive director.

proceeds with the State. TRC and the State of Mississippi have entered into no further definitive agreements.

The plaintiffs characterize this agreement as a "leasing agreement," and the agreement does refer to TRC as a "lessee" and the State of Mississippi as a "lessor." The defendant asserts that this agreement is not a valid lease conferring any property rights to TRC because it was not executed by the necessary officers of the State of Mississippi who must sign a lease for it to be effective, and that it served as merely an operating agreement until a formal lease could be agreed on and executed. A formal lease between the parties has never been agreed on and executed.

The court finds that BellSouth did have a valid easement along the railroad right-of-way prior to the plaintiffs entering the property. NASA granted an easement along this railroad right-of-way to BellSouth in early 1993. Although BellSouth failed to record the easement in the land records of Tishomingo County, the easement was made a matter of public record when it was described in the deed from NASA to the State of Mississippi, which was recorded on March 22, 1996, in the land records of Tishomingo County. Neither TRC nor MCRC nor any of their principals ran a title check on the property involved along the railroad right-of-way prior to their actions to lease, purchase, or operate the property or prior to their financial investments in the property.

Notwithstanding BellSouth's prior vested easement in a portion of the railroad right-of-way granted by NASA, the plaintiffs note that the undisputed evidence is that the fiberoptic cables laid along the right-of-way are not laid within the specific boundaries of the NASA easement, except for a small portion of approximately 200 feet of the ten miles of railroad. The court finds this fact to be immaterial, however, because of the plaintiffs' actual or constructive

6

knowledge of BellSouth's installation of the fiberoptic cable, the plaintiffs' joint venture partners' involvement in the installation, and the plaintiffs' acquiescence in the installation.

After TRC received the operating agreement from the State of Mississippi, Jerry Beasley, a BellSouth representative, had a meeting with Robert Crawford, father of the plaintiff Bruce Crawford. In this meeting, Robert Crawford was representing a company by the name of North American Software, later known as North America Datacom ("NADC"), which, through its subsidiary or affiliate North American Infotech ("NAIT"), was installing conduit along the railroad right-of-way to accommodate fiberoptic cable. Beasley, on behalf of BellSouth, made it known that BellSouth wished to purchase one of the three conduits laid by NAIT for use by BellSouth in installing fiberoptic cable along the right-of-way. During these discussions, representatives of NAIT and NADC gave Mr. Beasley a business card listing Bruce Crawford, the plaintiff here, as president of plaintiff TRC. No one at the meeting mentioned anything about BellSouth needing a permit or paying a license fee to lay its cable in the conduit purchased by BellSouth from NAIT. After BellSouth bought the conduit from NAIT for $43,534.05, BellSouth installed its fiberoptic cable in the conduit – a process that took from at least four to six weeks to complete. All the conduit work was done on the railroad right-of-way over which TRC was operating. During this time BellSouth workers saw the TRC train moving past them along the track and at least one time waved at the engineer, and the engineer waved back. Plaintiff Bruce Crawford testified he was the only person who was authorized to be an engineer on the train of TRC. The parties have stipulated that the first installation of the cable was completed by June 2001.

Bruce Crawford asserts that on April 13, 2002 – well after BellSouth had purchased the conduit and laid its cable in the conduit – he faxed a letter to Casie Jones, the designer for North Star Communications, one of BellSouth's contractors, stating that it had come to his attention that BellSouth had installed fiberoptic cables on the railroad's right-of-way and that TRC and BellSouth would need to arrange a licensing agreement for this and proposed installations. Jones testified that she never received the letter and that, if she had, she would have forwarded the matter to her supervisor to handle, as she had no responsibilities related to negotiations for licensing agreements. Although the plaintiffs admit they knew of the installation by April 2002 (and evidence reflects they had knowledge as early as mid-2001), they did not send BellSouth an invoice for licensing fees until May 2004 and did not file their complaint in this action until November 15, 2006.[2]

The court concludes from the evidence that the plaintiffs had constructive and, most likely, actual knowledge of BellSouth's installation of the fiberoptic cable as early as mid-2001. The court bases its conclusion in part on the fact that Bruce Crawford's father, Robert Crawford, as a representative of NADC and NAIT, was present at the negotiations for BellSouth's purchase of the conduit. Robert Crawford was not only principal of the company laying the conduits,

---

[2] The court sets forth this finding to show the plaintiffs' acquiescence in BellSouth's easement – not to address a statute of limitations argument. The plaintiffs attempt to recover from BellSouth under an "open account" claim. Section 15-1-29 of the Mississippi Code provides a three-year limitation period after accrual for "actions on an open account . . . not acknowledged in writing . . . ." The plaintiffs assert that BellSouth should have paid licensing fees to them on an annual basis. Because the first fiberoptic lines were laid by June 2001, according to the plaintiffs, the statute of limitations would not begin to run until June 2002. The plaintiffs acknowledge that the statute of limitations on the 2002 payment and the 2003 payment expired before they filed this suit on November 15, 2006, but allege that the subsequent annual payments – 2004 through 2010 – are not barred by the statute. The court's ruling on the merits herein in favor of BellSouth negates the need for further analysis of a statute of limitations argument.

NAIT, but was principal at one time of the plaintiff corporation Tishomingo Railroad Company. Robert Crawford had an office in the same building at the Yellow Creek facility as did plaintiff Bruce Crawford. The court further bases its conclusion on the fact that the trucks and employees of BellSouth and its contractors were present on the railroad right-of-way throughout the installation project while the TRC train traveled the railroad and that a BellSouth representative was handed a business card at the negotiation meeting and told to contact Bruce Crawford when the cable was to be laid in the conduit so to avoid any scheduling matters or conflicts interfering with the operation of the railroad. This knowledge on the part of the plaintiffs and the plaintiffs' failure to make an actual claim for licensing fees until 2004 reflect the plaintiffs' acquiescence regarding BellSouth's easement.

The court finds that TRC, NADC, and NAIT were partners in a joint venture regarding the fiberoptic telecommunications network they attempted to establish at Tri-State Commerce Park and along the railroad right-of-way operated by TRC and the railroad right-of-way owned by Norfolk Southern Railway running west from Iuka, Mississippi, to Memphis, Tennessee, and east to Chattanooga, Tennessee. The record reflects that each of the three entities contributed capital and services to the joint venture and each sought to earn a profit from it. Notice to one partner of a joint venture serves as notice to all the partners. The Mississippi Supreme Court "has stated on several occasions that the Uniform Partnership Act (UPA), which this state adopted in 1976, is applicable to joint ventures." *Duggins v. Guardianship of Washington Through Huntley*, 632 So. 2d 420, 427 (Miss. 1993). The Mississippi Uniform Partnership Act provides: "A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the

9

partnership . . . ." Miss. Code Ann. § 79-13-201(f). Further, the actions of one partner of a joint venture bind all other partners. "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner . . . for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership . . . ." *Duggins*, 632 So. 2d at 427 (quoting Miss Code Ann. § 79-12-11 (1972), which has since been repealed and replaced by Miss. Code Ann. § 79-13-301 (2005), which includes a similar provision: "Each partner is an agent of the partnership for the purpose of its business. An act of a partner . . . for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership . . . .").

In the present case, Jerry Wilemon, vice president of engineering for NAIT, and Robert Crawford, president of NADC and plaintiff Bruce Crawford's father, had actual and apparent authority to give BellSouth permission to purchase the conduit and install its fiberoptic lines therein. BellSouth, following instructions from NAIT and NADC, notified Brian Rushing, an employee of NADC, each day before entering the subject property and installing the fiberoptic lines. Rushing would, in turn, inform BellSouth whether it could proceed on that particular day or whether TRC's operations would prevent installation from proceeding at that time. On a daily basis, Rushing watched Stevens Construction, a BellSouth contractor, install the fiberoptic system in the conduit purchased by BellSouth along the right-of-way, and Rushing inspected and approved the work as it was completed. Further, Josh Ward, a contract worker for BellSouth, testified that he had a conversation with Bruce Crawford prior to the cable installation about when BellSouth would be installing cable in the conduit purchased from NADC and NAIT. At

that meeting, Bruce Crawford gave Ward a business card with Bruce Crawford's name on it and told Ward to call him when he was installing the cable.

As mentioned above, despite many discussions between TRC, through Bruce Crawford, and MDECD, there was never a formal lease agreed on and executed between the parties. The Letters of Understanding were not signed by the State of Mississippi officials who must execute a lease if it is to be binding. The Letters of Understanding merely served to authorize TRC to operate the railroad and use certain other property until a formal binding lease could be agreed on. In a letter of August 29, 2000, Bruce Crawford wrote to MDECD that he included a proposed lease only "for discussion purposes." One of the main sticking points which prohibited an agreement on a lease was that the State of Mississippi insisted on making any lease subject to prior easements granted along the railroad right-of-way. Because no agreed lease was ever executed between the parties TRC and the State of Mississippi, TRC was never granted the authority to sell right-of-way licenses for easements along the right-of-way. Just because the plaintiffs call the Letters of Understanding a lease does not make them a lease, as a valid lease could only be executed by the Executive Director of MDECD or the Secretary of State after all parties agreed to the terms.

TRC made the decision to allow NAIT to lay the conduit where it is now located, and the BellSouth cable is in that conduit. BellSouth's purchase of the conduit and the installation of the fiberoptic cables within that conduit created an implied easement by necessity. "To establish an easement by necessity, one must prove that (1) the dominant and servient parcels were once under common ownership, (2) severance by the common owner(s), (3) the necessity for the easement arose at the time of the severance by the common owner(s) and (4) the necessity is

continuing." *Daley v. Hughes*, 4 So. 2d 364, 368 (Miss. Ct. App. 2008). Each of these elements is met in the present case in regard to BellSouth and its use of the conduit. BellSouth is therefore entitled to use the right-of-way pursuant to their implied easement by necessity in addition to the NASA easement, which this court has already ruled valid hereinabove.

When MDECD took over Tri-State Commerce Park at Yellow Creek, it hired Mickey Milligan as a contract employee to attract industrial clients to set up businesses at the park. The businesses that came into the park did not have leases originally, including TRC. All had merely "letters of understanding" as did TRC, but all of the "letters of understanding" had been replaced by formal leases by 2003 except for those between TRC and the State of Mississippi. The Letters of Understanding in the present case do not convey right-of-way easements or the right to sell right-of-way easements. The persons who signed the Letters of Understanding on behalf of the State of Mississippi had no authority to convey any interest in real property owned by the State – whether leasehold interest, fee simple, or otherwise. Plaintiff Bruce Crawford exchanged proposed leases with MDECD several times but none was ever executed. Dr. Bob Robinson signed the Letters of Understanding giving TRC operating rights on the railroad until a formal lease could be signed, but Robinson told Bruce Crawford that he had no authority to sign a formal lease – that a formal lease would have to be agreed on and signed by the proper authorities.

It is clear that a valid lease conveying property rights did not exist between TRC and the State of Mississippi; however, the court finds this question ultimately to be immaterial since, in addition to the NASA easement and the implied easement by necessity, BellSouth also had

continuing." *Daley v. Hughes*, 4 So. 2d 364, 368 (Miss. Ct. App. 2008). Each of these elements is met in the present case in regard to BellSouth and its use of the conduit. BellSouth is therefore entitled to use the right-of-way pursuant to their implied easement by necessity in addition to the NASA easement, which this court has already ruled valid hereinabove.

When MDECD took over Tri-State Commerce Park at Yellow Creek, it hired Mickey Milligan as a contract employee to attract industrial clients to set up businesses at the park. The businesses that came into the park did not have leases originally, including TRC. All had merely "letters of understanding" as did TRC, but all of the "letters of understanding" had been replaced by formal leases by 2003 except for those between TRC and the State of Mississippi. The Letters of Understanding in the present case do not convey right-of-way easements or the right to sell right-of-way easements. The persons who signed the Letters of Understanding on behalf of the State of Mississippi had no authority to convey any interest in real property owned by the State – whether leasehold interest, fee simple, or otherwise. Plaintiff Bruce Crawford exchanged proposed leases with MDECD several times but none was ever executed. Dr. Bob Robinson signed the Letters of Understanding giving TRC operating rights on the railroad until a formal lease could be signed, but Robinson told Bruce Crawford that he had no authority to sign a formal lease – that a formal lease would have to be agreed on and signed by the proper authorities.

It is clear that a valid lease conveying property rights did not exist between TRC and the State of Mississippi; however, the court finds this question ultimately to be immaterial since, in addition to the NASA easement and the implied easement by necessity, BellSouth also had

authority to locate its fiberoptic lines on this public land along this public right-of-way pursuant to Mississippi Laws of 1886, Chapter 38, ("the 1886 Act"), which provides in pertinent part:

> Be it enacted by the Legislature of the State of Mississippi, that any telegraph or telephone company, chartered or incorporated by the laws of this or any other State of the United States, shall, upon making due compensation, as hereinafter provided, have the right to construct, maintain and operate telegraph or telephone lines through any public lands of this State, and on, across and along all highways, streets and roads, and across and under any navigable waters, and on, along upon the right-of-way and structures of any railroad . . . .[3]

The Mississippi Supreme Court upheld and enforced the 1886 Act in *Southern Bell Tel. & Tel. Co. v. City of Meridian*, 131 So. 2d 666 (Miss. 1961), which has never been overruled and continues to serve as binding authority on this issue. The court held that Southern Bell's "acts of acceptance" of the rights provided by the Act (i.e., construction of lines, maintenance, etc.) "resulted in the creation of an irrevocable contract between [Southern Bell], on the one hand, and the State, on the other, which is protected from impairment by the contract clause of the State Constitution." *Id.* at 670. The court concluded that any attempt by the legislature to enact a state law imposing a rent or charge on Southern Bell for the placement of its telephone lines or facilities on state public right-of-way was invalid "since it would impair the property right vested in Southern Bell." *Id.* at 675. Defendant BellSouth is a successor in interest to the legal rights of Southern Bell in the State of Mississippi, and its vested contract right applies to after-acquired property held by the State or its subdivisions. *See Davis v. South Central Bell Telephone Co.*, 480 F. Supp. 826, 829-30 (S.D. Miss. 1979).

---

[3]It is uncontested that the subject rail line has at all times relevant to the present case been public, being owned by either the State of Mississippi or Tishomingo County.

The plaintiffs assert that BellSouth does not have standing to contest the validity of the "lease" between TRC and the State of Mississippi (which ultimately conveyed the property to Tishomingo County) because BellSouth is not a party to the lease and is not a third-party beneficiary to the lease. This court finds to the contrary. BellSouth has standing to attack the scope of the rights granted under this putative lease between TRC and the State because BellSouth has a vested contract right to be on this public land along this public right-of-way pursuant to the 1886 Act as interpreted by the *City of Meridian* case. The court finds that in addition to the NASA easement and the easement by necessity, established when BellSouth purchased the conduit along the TRC right-of-way, the *City of Meridian* case also defeats the plaintiffs' claim that BellSouth owes licensing fees.

## Conclusion

For the foregoing reasons, the court finds in favor of the defendant BellSouth in all respects. A separate order in accord with this opinion shall issue this day.

This, the 21st day of September, 2010.

               */s/ Neal Biggers*
               **NEAL B. BIGGERS, JR.**
               **SENIOR U.S. DISTRICT JUDGE**